# EXHIBIT 1

INTERNATIONAL COMMERCIAL ARBITRATION COURT
at the Chamber of Commerce and Industry of the Russian Federation

Case No. 311/1997

## DECISION

City of Moscow                                    12 November 1998

The International Commercial Arbitration Court at the Chamber of Commerce and
Industry of the Russian Federation comprising

President            M.I. Braginsky
and Arbitrators      O.N. Zimenkova and A.L. Makovsky

in a hearing on 12 November 1998 has examined

the case in respect of a suit by "Lloyds Underwriters" (IC Agnew and Others
Lloyds Syndicate 672), Great Britain, against AO "Gazsnabtranzit", City of
Kishinev, Moldova, for recovery of US$ 8,512,500.00

Taking part in the hearing were:

representatives of the plaintiff: V.A. Musin and J.T. Barton - both on the basis of
powers of attorney dated 21.09.1998
representatives of the respondent: A.I. Kishner, V.G. Kutyrkin, G.N. Ursaky - all
by a power of attorney dated 26.05.1998
other persons: representatives of the plaintiff - A.L. Polyakov, V.I. Kurochkin,
representatives of the respondent - M.I. Grosu and A.I. Stepanova.  The said
persons took part in the hearing with the agreement of the parties and on the basis
of a decision by the arbitration body
                              Reporter: S.E. Rodionov

- 2 -

A statement of claim by "Lloyds Underwriters" (IC Agnew and Others Lloyds Syndicate 672), Great Britain (the plaintiff) against AO "Gazsnabtranzit", City of Kishinev, Moldova, (the respondent) for recovery of US$ 570,963.00 was received by the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation (ICAC) on 26 September 1997. The amount of the claim was subsequently increased to US$ 8,512,500.00.

In the statement of claim it is indicated that according to contract No.1 GM-97 dated 30 December 1996 (hereinafter - the contract) in the first quarter of 1997 RAO "Gazprom" was obliged to supply AO "Gazsnabtranzit" with 1.1 thousand million cubic metres of natural gas (para.1.1 of the contract) for the consumers of the Republic of Moldova at a price of US$ 58 for 1,000 cubic metres of gas (para.3.1).

In fact, over the first quarter of 1997 1,296,884,000 cubic metres of gas was received by AO "Gazsnabtranzit", which is confirmed by bilateral certificates of transfer and receipt signed by representatives of RAO "Gazprom" and AO "Gazsnabtranzit".

Thus, AO "Gazsnabtranzit" received natural gas in excess of the contracted amount in the volume of 196,884,000 cubic metres and for the sum of US$ 11,419,272.00 which was not paid off by AO "Gazsnabtranzit".

Foreseeing the possibility of gas being received in volumes exceeding those contracted for, RAO "Gazprom" concluded contract of insurance No. 97CG043 dated 30.12.1996 with the "Sogaz" insurance company, in which there was special reference among the insured accidents to gas being received by AO "Gazsnabtranzit" in volumes exceeding those contracted for.

The risk of having to pay out the insurance indemnity was reinsured by the "Sogaz" insurance company with the Anglo-Russian insurance company under contract No.97CG043R1 dated 30.12.1996, who in their turn took out reinsurance with the plaintiff - Lloyds Underwriters (insurance policy No.895/CD010870V dated 22.09.1997).

In connection with the breach by AO "Gazsnabtranzit" of the provisions of the contract RAO "Gazprom" applied to the "Sogaz" insurance company, who,

- 3 -

having admitted the insured accident, made a payout to RAO "Gazprom" of insurance indemnity in the amount of 3,303,453,462.00 roubles.

On the basis of the aforementioned contracts of reinsurance the said sum was presented to the Anglo-Russian insurance company for payment, and by the latter - to Lloyds Underwriters, by whom it was indeed paid in the dollar equivalent amount of US$ 570,963.60.

Thus, by the procedure of subrogation, the right of claim, which RAO "Gazprom" had had against AO "Gazsnabtranzit" in connection with non-fulfilment by the latter of the terms of contract No.GM 97 dated 30.12.1996, passed to the plaintiff - Lloyds Underwriters, within the limits of the sum paid out by him. Inasmuch that the plaintiff's claim No.3638 dated 11.09.1997 remained unsatisfied on the part of the respondent, the plaintiff, citing para. 7.2 of contract No. 1 GM-97 dated 30.12.1996 concluded between RAO "Gazprom" and AO "Gazsnabtranzit", lodged a statement of claim at ICAC for recovery from the respondent of US$ 570,963.60.

On 29 January 1998 the respondent's application No.29 dated 28.01.1998 was received at ICAC to the effect that the organisations that would appear in the case as the actual respondents on AO "Gazsnabtranzit's" behalf would be its self-financing structural sub-divisions PO RUMB "Tiraspoltransgaz" and AOZT "Moldovatransgaz".

On the grounds set out in item 3 of the present decision, the respondent's application was not granted.

On 1 June 1998 a fax dated 29.05.1998 was received at ICAC, in which the plaintiff asked that the hearing of the case, scheduled for 3 June 1998, be postponed owing to the need to specify the suit's claims more clearly.

Considering the plaintiff's petition and in conformity with para.38 of ICAC Rules, the hearing of the case was postponed to 23 September 1998 (ICAC Resolution dated 3 June 1998).

On 1 June 1998 ICAC received the plaintiff's letter No. 5092 dated 29.06.1998 with enclosure of a Supplement to the statement of claim for an increase in the sum of the claim.

As appears from the Supplement presented, the plaintiff increased his claims to the sum of US$ 8,512,500.00, justifying such

- 4 -

an increase by the fact that, apart from the payment in the sum of US$ 570,963.60 that had been indicated in the statement of claim, and on the same grounds, two further payments had been made by the plaintiff in the form of insurance indemnity for the sum of US$ 1,929,036.40 and US$ 6,012,500.00, making the total, taking the first payment into account, an overall sum of US$ 8,512,500.00.

Thus, the plaintiff suggests that the right of claim in respect of contract No. 1 GM 97 dated 30 December 1996 concluded between RAO "Gazprom" and AO "Gazsnabtranzit" has passed to him by the procedure of subrogation in the sum of US$ 8,512,500.00, which the plaintiff asks to be recovered from the respondent.

In connection with the increase in the amount of the claim, the plaintiff made an additional payment of the arbitration fee, which, taking the additional payment into account, amounted to US$ 36,465.00.

At the arbitration session on 23 September 1998 the respondent presented a response to statement of claim No.264 dated 18.09.1998. In his response the respondent, while not directly disputing the fact of having received natural gas in the first quarter of 1997 in volumes exceeding those provided for in contract No. 1GM 97 dated 30 December 1996, asked ICAC to take into account at the same time a number of circumstances, the grounds for examining which are set out in item 4 of the present decision.

In the course of the arbitration session the arbitration body established that the case papers did not include either the contracts of insurance and reinsurance or the payment documents on the basis of which payment of insurance indemnity was made.

In view of the necessity of obtaining the said documents, and guided by para. 36 of the Rules, ICAC resolved to postpone the hearing of the case to 12 November 1998 (ICAC Resolution dated 23.09.1998).

On 10 November 1998 the plaintiff's letter No. 374 dated 05.11.1998 with enclosure of the documents required by ICAC was received by the International Commercial Arbitration Court.

At the arbitration hearing that took place on 12 November 1998 the plaintiff confirmed the claims set out in the statement of claim and

- 5 -

the supplement to it.  The plaintiff also asked that the respondent be charged costs in respect of payment of the arbitration fee.

The respondent confirmed the arguments and circumstances to which he had referred in his response to the statement of claim.

### Grounds for the decision

Having studied the case materials and having heard the representatives of the parties, the arbitration body has come to the following conclusions.

1.  Examining the question of the competence of ICAC to resolve this dispute, the arbitrators proceeded from the basis that the dispute between the plaintiff and the respondent arose from contract No. 1GM-97 dated 30 December 1996 concluded between RAO "Gazprom" and the respondent - AO "Gazsnabtranzit".  Contained in para. 7.2 of this contract is an arbitration clause which provides for the resolution of all disputes in the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation (City of Moscow) in conformity with the Rules of this court.

Inasmuch that the claims in respect of the said contract have passed from RAO "Gazprom" to the plaintiff - Lloyds Underwriters - by the procedure of subrogation, the arbitration body believes that the aforementioned arbitration clause also extends its effect to the plaintiff.

The competence of ICAC to examine this dispute is also confirmed by the fact that the plaintiff directed the statement of claim to ICAC, and the respondent, having presented to ICAC his response to the statement of claim, did not contest the competence of this arbitration court to resolve such a dispute.

Taking into account the foregoing and being guided by articles 7 and 16 of the Law of the Russian Federation "On international commercial arbitration" dated 7 July 1993 and para. 5 sub-para. 1 of the Rules, the ICAC has acknowledged that it possesses the competence to examine this dispute.

2.  In para. 7.2 of contract No.1GM-97 dated 30.12.1996 concluded between RAO "Gazprom" and the respondent - AO "Gaxsnabtranzit",

- 6 -

the parties made provision for the norms of the material law of the Russian Federation to be applied.

Inasmuch that the dispute between the plaintiff and the respondent has arisen from this contract, the arbitration body, in examining the question of the applicable law, has been guided by the norms for disputes contained in art. 166 of the Fundamentals of Civil Legislation of the USSR and the Republics of 1991. On the strength of this article it is the law of the country chosen by the parties at the time of their agreement to an external economic transaction that is to be applied.

On the basis of what has been set out above and considering that the right of claim in respect of the aforementioned contract has passed to the plaintiff - Lloyds Underwriters - by the procedure of subrogation, ICAC finds it necessary to apply the norms of Russian law to the substance of the dispute.

3. The grounds for not granting AO "Gazsnabtrans's" application, set out in letter No. 29 dated 28.01.1998, for the organisations which would appear in the case as the actual respondents on AO "Gazsnabtranzit's" behalf to be its self-financing structural sub-divisions, PO RUMB "Tiraspoltransgaz" and AOZT "Moldovatransgaz", are as follows.

As appears from the case materials, PO RUMB "Tiraspoltransgaz" and AOZT "Moldovatransgaz" are independent juridical persons and are not answerable in respect of the obligations of AO "Gazsnabtranzit".

The dispute under examination between the plaintiff and the respondent arose out of contract No. 1GM-97 dated 30.12.1996, the parties to which are RAO "Gazprom" and AO "Gazsnabtranzit".

Neither AO "Gazsnabtranzit" nor RAO "Gazprom" concluded any contracts or agreements with the said organisations to cede rights and obligations in respect of contract No. 1GM-97 dated 30.12.1996, which has been confirmed in the course of the arbitration session.

The respondent's arguments to the effect that PO RUMB "Tiraspoltransgaz" and AOZT "Moldovatransgaz" settled accounts for gas both with the consumers and with RAO "Gazprom" direct, bypassing AO "Gazsnabtranzit", do not, in the opinion of ICAC, appear convincing, inasmuch that

- 7 -

under art. 403 of the GK [*Civil Code*] of the RF the debtor (in this case the respondent) is answerable for the non-fulfilment or improper fulfilment of an obligation by third persons charged with its fulfilment.

Thus, having account that the right of claim in respect of contract No. 1GM-97 dated 30.12.1996 has passed by the procedure of subrogation to the plaintiff - Lloyds Underwriters - the arbitration body considers that the proper respondent in the case is AO "Gazsnabtranzit".

4. Proceeding to examine the substance of the suit claims, the arbitration body established that, in breach of para. 1.1 of contract No. GM-97 dated 30.12.1996, the respondent - AO "Gazsnabtranzit" - in the first quarter of 1997 received from RAO "Gazprom" 196,884,000 cubic metres more natural gas than had been provided for by the said paragraph of the contract. Receipt of gas in volumes exceeding those contracted for is confirmed by bilateral certificates of transfer and receipt Nos. 1, 2 and 3, signed by representatives of RAO "Gazprom" and AO "Gazsnabtranzit" on 18.02.1997, 11.03.1997 and 08.04.1997 respectively.

The respondent's argument regarding the impossibility of providing due monitoring of the supply of gas at gas-metering stations located beyond the borders of Moldova is, in the opinion of the arbitration body, without foundation, inasmuch that the terms of contract No. 1GM-97 dated 30.12.1996 provide for the opportunity for representatives of the parties and representatives of the Customs authorities to be present, as they require, at metering points (art. 2 para. 2.5)

Neither can the respondent's assertion be admitted as lawful that the said certificates of transfer and receipt of gas were drawn up mainly for declaring it to the Customs authorities of the Republic of Moldova, since on the strength of art. 2 para. 2.7 of the contract the quantity of gas shown on the monthly certificates of transfer and receipt is final and binding for the parties and serves as the basis for the settlement of their mutual accounts. Moreover, there is also a provision in the certificates themselves (para. 2) that they are drawn up as documents for the parties to settle their mutual accounts under contract No. 1GM-97 dated 30.12.1996.

- 8 -

The respondent's reference to Supplement No.1 concerning an increase in the annual limit on the supply of gas, signed on 13.11.1997 between RAO "Gazprom" and AO "Gazsnabtranzit", to contract No. 1GM-97 dated 30.12.1996, as a document proving fulfilment of the contract by the parties without breach of the gas supply volume indices is not accepted by ICAC, inasmuch that the said supplement (para. 1) provides for the supply of additional volumes of gas only in the November and December of 1997, without altering the contractual obligations of the parties in respect of the supply of gas for January-October 1997, including the supply of gas in the 1st quarter of that year, over which the dispute arose.

Considering that under art. 3 para. 3.1 of the contract the natural gas was supplied at a price of US $58 for 1,000 cubic metres, ICAC has established that the value of the gas received by AO "Gazsnabtranzit" in the first quarter of 1997 over and above that provided for in the contract (196,884,000 cubic metres) amounted to US $11,419,272.00 (196,884,000 cubic metres: 1000 cubic metres x US $58 - US $11,419,272.00).

Inasmuch that the said sum has not been paid by the respondent, ICAC has ascertained that this sum in the amount of US $11,419,272.00 represents the respondent's indebtedness to RAO "Gazprom". At the same time, the arbitration body did not accept, as it was unproven, the respondent's assertion that the said sum of indebtedness is taken fully into account with the settlement of mutual accounts with RAO "Gazprom" in the sum of US $11,368,000.00 and is being offset by AO "Gazsnabtranzit".

In accordance with insurance contract No. 97CG043 dated 30.12.1996, part of the sum of the respondent's indebtedness was paid out by the "Sogaz" insurance company to RAO "Gazprom" as insurance indemnity in connection with breach by the respondent of his obligations in respect of contract No. 1GM-97 dated 30.12.1996.

Insurance indemnity has been paid by the "Sogaz" insurance company in roubles (at the RF Central Bank rate for the date of payment) in three payments equivalent overall to the sum of US $8,612,500.00.

On the basis of reinsurance contract No. 97CG043 R1 dated

- 9 -

30.12.1996 the "Sogaz" insurance company received the sum indicated from the Anglo-Russian insurance company, which, in its turn, received this sum in insurance indemnity from Lloyds Underwriters in conformity with insurance policy No. 895/CD010870V dated 22.09.1997.

Thus, ICAC has established that with three payments in the sums of US$ 570,963.60, US$ 1,929,036.40 and US$ 6,012,500.00 respectively Lloyds Underwriters made a payout of insurance indemnity for the overall sum of US$ 8,512,500.00.

The payments indicated are confirmed by the accounts and payment documents available in the case papers, and also by letters No. AP-549 dated 05.09.1997, No. AP-396 dated 10.06.1998 and No. AP-395 dated 10.06.1998 concerning subrogation that were directed by RAO "Gazprom" to the address of the "Sogaz" insurance company, by letters No. 257-SG dated 05.09.1997, No. 834/K dated 11.06.1998 and No. 834-K1 dated 11.06.1998 directed by the "Sogaz" insurance company to the Anglo-Russian insurance company and letters No. 222 dated 05.09.1997, No. 297/1 dated 25.06.1998 and No. 298 dated 25.06.1998 addressed to the Anglo-Russian insurance company by Lloyds Underwriters.

In examining the question of the transfer of the right of claim in respect of contract No. 1GM-97 dated 30.12.1998 concluded between RAO "Gazprom" and AO "Gazsnabtranzit", the arbitration body was guided by art. 965 of the RF Civil Code, on the strength of which the right of claim that the insurant has against the person responsible for the losses indemnified as a result of insurance, passes, within the limits of the sum paid out, to the insurer who has paid out the insurance indemnity.

Inasmuch that on the basis of the aforementioned contracts of insurance and reinsurance it was the plaintiff himself - Lloyds Underwriters - who in the final analysis paid out the insurance indemnity in the sum of US$ 8,512,500.00 because of a breach by the respondent of his obligations under contract No. 1GM-97 dated 30.12.1996, ICAC believes that, in respect of the said contract, the right of claim against the person responsible for the losses, i.e. the respondent, has passed to the plaintiff under the procedure of subrogation and within the limits of the sum paid out by him.

- 10 -

The transfer of this right of claim to the plaintiff in succession from RAO "Gazprom", the "Sogaz" insurance company and the Anglo-Russian insurance company is also confirmed by the aforementioned letters concerning subrogation.

The respondent's reference to para. 8.6 of contract No. 1GM-97 dated 30.12.1996, on the strength of which neither of the parties may transfer his rights and obligations to third persons without notifying the other party in writing, is not lawful, since according to articles 387 and 965 of the Civil Code of the RF the transfer of appropriate rights and obligations to an insurer under the procedure of subrogation is exercised on the basis of law and therefore does not require the consent of the other party.

Neither is the respondent's assertion justified that RAO "Gazprom" is obliged to bear responsibility for half the sum of the insurance indemnity paid out by the plaintiff because it owns fifty percent of the shares in the statutory capital of the respondent - AO "Gazsnabtranzit".

As appears from the case materials, RAO "Gazprom" is a Russian juridical person and is not answerable in respect of the debts and obligations of the respondent.

Thus, on the basis of what is set out above, and considering that the respondent has not paid the plaintiff the sum of the insurance indemnity paid out by him, ICAC finds the plaintiff's claim for recovery from the respondent of the sum of US$ 8,512,500.00 justified and liable to be met.

5. In conformity with para. 1 sub-para. 6 of the Provision on arbitration costs and fees, which appears as an annexure to the ICAC Rules, the plaintiff's costs in paying an arbitration fee in the sum of US$ 36,465.00 are charged to the respondent.

On the basis of what is set out above and being guided by para. 39 of the Rules, the International Commercial Arbitration Court at the Chamber of Trade and Industry of the Russian Federation

- 11 -

## HAS  DECIDED:

     to oblige the respondent, AO "Gazsnabtranzit", Kishinev, Moldova, to pay the plaintiff - Lloyds Underwriters (I.C. Agnew & Others Lloyds Syndicate 672), Great Britain, US$ 8,512,500.00, and also US$ 36,465.00 in compensation for the plaintiff's expenses in respect of payment of the arbitration fee.

     The present decision has been drawn up and signed in three copies, of which one is intended for safekeeping in ICAC files, one - for the plaintiff and one - for the respondent.


President of the arbitration body   [init.}      M.I. Braginsky

      [sig.]                     [sig.]
O.N. Zimenkova     [official stamp]     A.L.Makovsky

2, The Street
Chilmark
Salisbury
Wiltshire SP3 5AR
Tel./fax: 01722 716861

## Translation Certificate

To whom it may concern:

1. This is to certify that the 11-page translation into English of the Decision dated 12 November 1998 by the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation in respect of Case No.311/1997 is signed on each page by me to signify that:

- the content is true and accurate, having been translated to the best of my ability as a professional translator working for the last seven years predominantly from Russian into English;

- the translation has been done in accordance with the standards required by the two institutes (Institute of Linguists and Institute of Translation and Interpreting) of which I have been a full member for seven years.

2. If the eventual recipient wishes to discuss the translation, I shall be glad to assist, and may be reached using the contact details given at the letterhead on this certificate.

Signed:                                      (N.S. Pattenden)


Date:          21st April 1999

МЕЖДУНАРОДНЫЙ КОММЕРЧЕСКИЙ АРБИТРАЖНЫЙ СУД
при Торгово-промышленной палате Российской Федерации


**Дело N** 311/1997


Р Е Ш Е Н И Е


**г. Москва**                                  " 12 " ноября 1998 г.


Международный коммерческий арбитражный суд при Торгово-промышленной палате Российской Федерации в составе

председателя   М.И. Брагинского
и арбитров     О.Н. Зименковой и А.Л. Маковского

рассмотрел в заседании 12 ноября 1998 года

**дело по иску** "Андеррайтеры Ллойда" /IC Agnew & Others Lloyds Syndicate 672/, Великобритания, к АО "Газснабтранзит", г. Кишинев, Молдова, о взыскании долл. США 8.512.500,00

В заседании по делу приняли участие:

представители истца: В.А. Мусин и Д.Т. Бартон – оба на основании доверенностей от 21.09.1998 г..
представители ответчика: А.И. Кишнер, В.Г. Кутыркин, Г.Н. Урсакий – все по доверенности от 26.05.1998 г.
другие лица: представители истца - А.Л. Поляков, В.Н. Курочкин, представители ответчика - М.И. Гросу и А.И. Степанова. Указанные лица участвовали в заседании с согласия сторон и на основании решения состава арбитража
Докладчик: С.Е. Родионов

- 2 -

26 сентября 1997 года в Международный коммерческий арбитражный суд при Торгово-промышленной палате Российской Федерации /МКАС/ поступило исковое заявление "Андеррайтеры Ллойда" /IC Agnew & Others Lloyds Syndicate 672/, Великобритания /истец/, к АО "Газснабтранзит", г. Кишинев, Молдова, /ответчик/, о взыскании долл. США 570.963,00. Впоследствии цена иска была увеличена до долл. США 8.512.500,00.

В исковом заявлении указано, что в соответствии с контрактом N 1 ГМ-97 от 30 декабря 1996 года /далее - контракт/ РАО "Газпром" в первом квартале 1997 года обязалось поставить АО "Газснабтранзит" для потребителей Республики Молдова 1.1 млрд.куб.метров природного газа /п. 1.1 контракта/ по цене 58 долл.США за 1.000 куб.м газа /п. 3.1/.

Фактически за 1 квартал 1997 года АО "Газснабтранзит" получено 1.296.884.000 куб.м. газа, что подтверждено двусторонними актами сдачи-приемки, подписанными представителями РАО "Газпром" и АО "Газснабтранзит".

Таким образом, АО "Газснабтранзит" получил природного газа сверх договорного в объеме 196.884.000 куб.м на сумму долл.США 11.419.272,00 которая не была уплачена АО "Газснабтранзит".

Предвидя возможность получения газа в объемах, превышающих договорные, РАО "Газпром" заключило со страховым обществом "Согаз" договор страхования N 97CG043 от 30.12.1996 г., в числе страховых случаев которого специально указано получение газа АО "Газснабтранзит" в объемах, превышающих договорные.

Риск выплаты страхового возмещения был перестрахован страховым обществом "Согаз" в Англо-Русской страховой компании по договору N 97CG043R1 от 30.12.1996 г., которая в свою очередь произвела перестрахование у истца - Андеррайтеров Ллойда /страховой полис N 895/CD010870V от 22.09.1997 г./.

В связи с нарушением АО "Газснабтранзит" положений контракта РАО "Газпром" обратилось в страховое общество "Согаз", кото-

- 3 -

рое, признав страховой случай, произвело выплату РАО "Газпром" страхового возмещения в размере руб. 3.303.453.462,00.

На основании вышеупомянутых договоров перестрахования указанная сумма была предъявлена к оплате Англо-Русской страховой компании, а той – Андеррайтерам Ллойда, которыми и была оплачена в долларовом эквиваленте в размере долл. США 570.963,60.

Таким образом, в порядке суброгации, к истцу – Андеррайтерам Ллойда перешло в пределах выплаченной им суммы право требования, которое имело РАО "Газпром" к АО "Газснабтранзит" в связи с невыполнением последним условий контракта N ГМ-97 от 30.12.1996 г. Поскольку претензия истца от 11.09.1997 г. N 3638 осталась без удовлетворения со стороны ответчика, истец, ссылаясь на пункт 7.2 контракта N 1 ГМ-97 от 30.12.1996 г., заключенного между РАО "Газпром" и АО "Газснабтранзит", направил в МКАС исковое заявление о взыскании с ответчика долл. США 570.963,60.

29 января 1998 года в МКАС поступило заявление ответчика N 29 от 28.01.1998 г. о том, что фактическими ответчиками по делу от имени АО "Газснабтранзит" выступят его хозрасчетные структурные подразделения ПО РУМГ "Тираспольтрансгаз" и АОЗТ "Молдоватрансгаз".

По мотивам, изложенным в пункте 3 настоящего решения, заявление ответчика оставлено без удовлетворения.

1 июня 1998 г. в МКАС поступил факс от 29.05.1998 г., в котором истец просил отложить слушание дела, назначенное на 3 июня 1998 г., в связи с необходимостью уточнения исковых требований.

Учитывая ходатайство истца и в соответствии с § 36 Регламента МКАС, дело слушанием было отложено на 23 сентября 1998 года /Постановление МКАС от 3 июня 1998 года/.

1 июня 1998 г. МКАС получил письмо истца N 5092 от 29.06.1998 г. с приложением Дополнения к исковому заявлению об увеличении суммы исковых требований.

Как следует из представленного Дополнения, истец увеличил свои требования до суммы долл. США 8.512.500,00, обосновывая та-

- 4 -

кое увеличение тем, что им, помимо платежа в сумме долл. США 570.963,60, указанного в исковом заявлении, и по таким же основаниям, произведено в виде страхового возмещения еще два платежа на сумму долл. США 1.929.036,40 и долл. США 6.012.500,00, а всего, с учетом первого платежа, на общую сумму долл. США 8.512.500,00.

Таким образом, истец полагает, что к нему в порядке суброгации перешло право требования по заключенному между РАО "Газпром" и АО "Газснабтранзит" контракту N 1ГМ-97 от 30 декабря 1996 г. в сумме долл. США 8.512.500,00, которую истец просит взыскать с ответчика.

В связи с увеличением исковых требований истец произвел доплату арбитражного сбора, который, с учетом доплаты, составил долл. США 36.465,00.

В арбитражном заседании 23 сентября 1998 года ответчик представил отзыв на исковое заявление N 264 от 18.09.1998 г. В своем отзыве ответчик, прямо не оспаривая факт получения в первом квартале 1997 г. природного газа в объемах, превышающих предусмотренные контрактом N 1ГМ-97 от 30.12.1996 г., просил МКАС учесть при этом ряд обстоятельств, мотивы рассмотрения которых изложены в пункте 4 настоящего решения.

В ходе арбитражного заседания состав арбитража установил, что в деле отсутствуют договоры страхования и перестрахования, а также платежные документы, на основании которых была произведена уплата страхового возмещения.

В связи с необходимостью получения указанных документов и руководствуясь § 36 Регламента, МКАС постановил дело слушанием отложить на 12 ноября 1998 года /Постановление МКАС от 23.09.1998 г./.

10 ноября 1998 г. Международным коммерческим арбитражным судом было получено письмо истца N 374 от 05.11.1998 г. с приложением истребованных МКАС документов.

В арбитражном заседании, состоявшемся 12 ноября 1998 года, истец подтвердил требования, изложенные в исковом заявлении и

- 5 -

дополнении к нему. Истец также просил возложить на ответчика расходы по уплате арбитражного сбора.

Ответчик подтвердил доводы и обстоятельства, на которые он ссылался в отзыве на исковое заявление.

## Мотивы решения

Изучив материалы дела и заслушав представителей сторон, состав арбитража пришел к следующим выводам.

1. Рассматривая вопрос о компетенции МКАС разрешать данный спор, арбитры исходили из того, что спор между истцом и ответчиком возник из контракта N 1ГМ-97 от 30 декабря 1996 года, заключенного между РАО "Газпром" и ответчиком - АО "Газснабтранзит". В пункте 7.2 этого контракта содержится арбитражная оговорка, которая предусматривает разрешение всех споров в Международном коммерческом арбитражном суде при Торгово-промышленной палате Российской Федерации /г. Москва/ в соответствии с Регламентом этого суда.

Поскольку требования по указанному контракту перешли от РАО "Газпром" к истцу - Андеррайтерам Ллойда в порядке суброгации, состав арбитража полагает, что вышеупомянутая арбитражная оговорка распространяет свое действие и на истца.

Компетенция МКАС рассматривать данные спор подтверждается также и тем, что истец направил в МКАС исковое заявление, а ответчик, представив в МКАС отзыв на исковое заявление, не оспорил компетенцию этого арбитражного суда разрешать такой спор.

Учитывая изложенное и руководствуясь статьями 7 и 16 Закона РФ от 7 июля 1993 г. "О международном коммерческом арбитраже" и п. 5 § 1 Регламента, МКАС признал, что он обладает компетенцией рассматривать данный спор.

2. В пункте 7.2 контракта N 1ГМ-97 от 30.12.1996 г., заключенного между РАО "Газпром" и ответчиком - АО "Газснабтранзит",

- 6 -

стороны предусмотрели применение норм материального права Российской Федерации.

Поскольку спор между истцом и ответчиком возник из данного контракта, состав арбитража, при рассмотрении вопроса о применимом праве, руководствовался коллизионными нормами, содержащимися в ст. 166 Основ гражданского законодательства Союза ССР и республик 1991 г. В силу этой статьи применению подлежит право страны, избранное сторонами при совершении внешнеэкономической сделки.

На основании изложенного и учитывая, что право требования по вышеуказанному контракту перешло к истцу – Андеррайтерам Ллойда в порядке суброгации, МКАС находит необходимым применить к существу спора нормы российского права.

3. Заявление АО "Газснабтранс", изложенное в письме N 29 от 28.01.1998 г., о том, что фактическими ответчиками по делу от имени АО "Газснабтранзит" выступят его хозрасчетные структурные подразделения ПО РУМГ "Тираспольтрансгаз" и АОЗТ "Молдоватрансгаз", удовлетворению не подлежит по следующим основаниям.

Как следует из материалов дела ПО РУМГ "Тираспольтрансгаз" и АОЗТ "Молдоватрансгаз" являются самостоятельными юридическими лицами и не отвечают по обязательствам АО "Газснабтранзит".

Рассматриваемый спор между истцом и ответчиком возник из контракта N 1ГМ-97 от 30.12.1996 г., сторонами по которому являются РАО "Газпром" и АО "Газснабтранзит".

Каких-либо договоров или соглашений о переуступке прав и обязанностей по контракту N 1ГМ-97 от 30.12.1996 г. ни АО "Газснабтранзит", ни РАО "Газпром" с указанными организациями не заключали, что подтверждено в ходе арбитражного заседания.

Доводы ответчика о том, что ПО РУМГ "Тираспольтрансгаз" и АОЗТ "Молдоватрансгаз" осуществляли расчеты за газ как с потребителями, так и с РАО "Газпром" напрямую, минуя АО "Газснабтранзит", не являются, по мнению МКАС, убедительными, поскольку в

- 7 -

соответствии со ст. 403 ГК РФ должник /в данном случае ответчик/ отвечает за неисполнение или ненадлежащее исполнение обязательства третьими лицами, на которых было возложено исполнение.

Таким образом, учитывая, что право требование по контракту N 1ГМ-97 от 30.12.1996 г. перешло в порядке суброгации к истцу – Андеррайтерам Ллойда, состав арбитража считает, что надлежащим ответчиком по делу является АО "Газснабтранзит".

4. Приступив к рассмотрению исковых требований по существу, состав арбитража установил, что в нарушение пункта 1.1 контракта N ГМ-97 от 30.12.1996 г. ответчик – АО "Газснабтранзит" в первом квартале 1997 года получил от РАО "Газпром" на 196.884.000 куб.м природного газа больше, чем это предусмотрено указанным пунктом контракта. Получение газа в объемах, превышающих договорные, подтверждается двусторонними актами сдачи-приемки газа NN 1; 2; 3, подписанными представителями РАО "Газпром" и АО "Газснабтранзит" соответственно 18.02.1997 г., 11.03.1997 г. и 08.04.1997 г.

Довод ответчика о невозможности обеспечения должного контроля за поступлением газа на газоизмерительных станциях, находящихся вне пределов Молдовы, не является, по мнению состава арбитража, обоснованным, поскольку положения контракта N 1ГМ-97 от 30.12.1996 г. предусматривают возможность присутствия на замерных узлах представителей сторон и представителей таможенных органов по их требованию /п. 2.5 ст. 2/.

Не может быть признано правомерным и утверждение ответчика о том, что указанные акты сдачи-приемки газа составлялись главным образом для его декларирования в таможенных органах Республики Молдова, т.к. в силу п. 2.7 ст. 2 контракта количество газа, указанное в месячных актах сдачи-приемки, является окончательным и обязательным для сторон и служит основанием для их взаиморасчетов. Кроме того в самих актах /пункт 2/ также предусмотрено, что они составлены в качестве документов для взаиморасчетов сторон по контракту N 1ГМ-97 от 30.12.1996 г.

- 8 -

Ссылка ответчика на подписанное 13.11.1997 г. между РАО "Газпром" и АО "Газснабтранзит" Дополнение N 1 к контракту N 1ГМ-97 от 30.12.1996 г. об увеличении годового лимита поставки газа, как на документ, доказывающий выполнение сторонами контракта без нарушения объемных показателей поставки газа, не принимается МКАС, поскольку указанное дополнение /пункт 1/ предусматривает поставку дополнительных объемов газа только в ноябре и декабре 1997 г. без изменения контрактных обязательств сторон по поставке газа за январь-октябрь 1997 г., включая поставку газа в 1-ом квартале этого года, по которому возник спор.

Учитывая, что согласно п. 3.1 ст. 3 контракта природный газ поставлялся по цене 58 долл. США за 1000 куб.м, МКАС установил, что стоимость газа, полученного АО "Газснабтранзит" в первом квартале 1997 г. сверх предусмотренного контрактом /196.884.000 куб.м/, составила долл. США 11.419.272,00 /196.884.000 куб.м: 1000 куб.м х 58 долл. США = 11.419.272,00 долл. США/.

Поскольку указанная сумма не была уплачена ответчиком, МКАС констатировал, что данная сумма в размере долл. США 11.419.272,00 является задолженностью ответчика перед РАО "Газпром". При этом состав арбитража не принял, как недоказанное, утверждение ответчика, что указанная сумма задолженности учтена в полном размере при взаиморасчетах с РАО "Газпром" в сумме долл. США 11.368.000,00 и возмещается АО "Газснабтранзит".

В соответствии с договором страхования N 97CG043 от 30.12.1996 г. часть суммы задолженности ответчика была выплачена страховым обществом "Согаз" РАО "Газпром" в качестве страхового возмещения в связи с нарушением ответчиком своих обязательств по контракту N 1ГМ-97 от 30.12.1996 г.

Страховое возмещение уплачено страховым обществом "Согаз" в рублях /по курсу ЦБ РФ на день оплаты/ тремя платежами в общей сумме, эквивалентной сумме долл. США 8.512.500,00.

На основании договора перестрахования N 97CG043 R1 от

- 9 -

30.12.1996 г. страховое общество "Согаз" получило указанную сумму от Англо-Русской страховой компании, которая, в свою очередь получила страховое возмещение этой суммы от Андеррайтеров Ллойда согласно страховому полису N 895/CD010870V от 22.09.1997 г.

Таким образом, МКАС установил, что Андеррайтеры Ллойда тремя платежами соответственно в суммах долл. США 570.963,60, долл. США 1.929.036,40 и долл. США 6.012.500,00 осуществили выплату страхового возмещения на общую сумму долл. США 8.512.500,00.

Указанные платежи подтверждаются имеющимися в деле счетами и платежными документами, а также письмами о суброгации N АП-549 от 05.09.1997 г., N АП-396 от 10.06.1998 г., N АП-395 от 10.06.1998 г., направленными РАО "Газпром" в адрес страхового общества "Согаз", N 257-СГ от 05.09.1997 г., N 834/К от 11.06.1998 г., N 834/К1 от 11.06.1998 г., направленными страховым обществом "Согаз" Англо-Русской страховой компании, и N 222 от 05.09.1997 г., N 297/1 от 25.06.1998 г., N 298 от 25.06.1998 г., в адрес Англо-Русской страховой компании Андеррайтером Ллойда.

Рассматривая вопрос о переходе права требования по контракту N 1ГМ-97 от 30.12.1998 г., заключенному между РАО "Газпром" и АО "Газснабтранзит", состав арбитража руководствовался ст. 965 ГК РФ, в силу которой к страховщику, выплатившему страховое возмещение, переходит в пределах выплаченной суммы право требования, которое страхователь имеет к лицу, ответственному за убытки, возмещенные в результате страхования.

Поскольку на основании вышеуказанных договоров страхования и перестрахования именно истец – Андеррайтеры Ллойда в конечном итоге выплатил страховое возмещение в сумме долл. США 8.512.500,00 в связи с нарушением ответчиком обязательств по контракту N 1ГМ-97 от 30.12.1996 г., МКАС полагает, что к истцу в порядке суброгации и в пределах выплаченной им суммы перешло право требования по указанному контракту к лицу, ответственному за убытки, т.е. к ответчику.

- 10 -

Переход такого права требования к истцу последовательно от РАО "Газпром", страхового общества "Согаз" и Англо-Русской страховой компании подтверждается также и вышеупомянутыми письмами о суброгации.

Ссылка ответчика на пункт 8.6 контракта N 1ГМ-97 от 30.12.1996 г., в силу которого ни одна из сторон не может передавать свои права и обязанности третьим лицам без письменного уведомления другой стороны, не является правомерной, т.к. согласно ст.ст. 387, 965 ГК РФ переход соответствующих прав и обязанностей к страховщику в порядке суброгации осуществляется на основании закона и поэтому не требует согласия другой стороны.

Не является также обоснованным и утверждение ответчика о том, что РАО "Газпром" обязано нести ответственность за половину суммы страхового возмещения, выплаченного истцом, поскольку оно владеет пятьюдесятью процентами акций в уставном капитале ответчика - АО "Газснабтранзит".

Как следует из материалов дела, РАО "Газпром" является российским юридическим лицом и не отвечает по долгам и обязательствам ответчика.

Таким образом, на основании изложенного и учитывая, что ответчик не уплатил истцу выплаченную им сумму страхового возмещения, МКАС находит требование истца о взыскании с ответчика суммы долл.США 8.512.500,00 обоснованным и подлежащим удовлетворению.

5. В соответствии с п. 1 § 6 Положения об арбитражных расходах и сборах, являющегося приложением к Регламенту МКАС, расходы истца по уплате арбитражного сбора в сумме долл.США 36.465,00 возлагаются на ответчика.

На основании вышеизложенного и руководствуясь § 39 Регламента, Международный коммерческий арбитражный суд при Торгово-промышленной палате Российской Федерации

- 11 -

## Р Е Ш И Л :

Обязать ответчика АО "Газснабтранзит", Кишинев, Молдова, уплатить истцу – Андеррайтеры Ллойда /IC Agnew & Others Lloyds Syndicate 672/, Великобритания, долл. США 8.512.500,00, а также долл. США 36.465,00 в возмещение расходов истца по уплате арбитражного сбора.

Настоящее решение составлено и подписано в трех экземплярах, из которых один предназначен для хранения в делах МКАС, один – для истца, один – для ответчика.


Председатель состава арбитража                    М.И. Брагинский


О.Н. Зименкова                                    А.Л. Маковский


0 2 АПР 1999

ИТОГО в настоящем документе
Одиннадцать лист 06
Нотариус